IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| James E. Ratchford, | ) | Civil Action No.  2:14-cv-707-MGL-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, | ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, James E. Ratchford, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding his  claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 47 years old on his alleged disability onset date of May 26, 2011. (R. at 16, 29.) Plaintiff claims disability due to, *inter alia*, diabetes mellitus, degenerative joint disease of the left knee, status post fracture of tibial plateau of the left leg, lipoma of the right shoulder, and peripheral neuropathy. (R. at 19.) Plaintiff has a high school education and past relevant work as a machine operator. (See R. at 43, 86.)

Plaintiff filed an application for DIB on June 7, 2011. (R. at 16.) After his application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on November 7, 2012. (R. at 16.) In a decision dated December 13, 2012, the ALJ found that Plaintiff was not disabled. (R. at 16-31.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-5), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1)     The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

(2)     The claimant has not engaged in substantial gainful activity since May 26, 2011, the alleged onset date (20 CFR 404.1571 *et seq*.).

(3)     The claimant has the following severe combination of impairments: diabetes mellitus, degenerative joint disease of the left knee, status past fracture of tibial plateau of left leg times two, lipoma of right shoulder and peripheral neuropathy (20 CFR 404.1520(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

(5)     After careful consideration of the entire record, I find that the claimant has the RFC to perform a range of sedentary to light work as defined in 20 CFR 404.1567(b) (lift/carry, push/pull 20 pounds occasionally, 10 pounds frequently, sit about 6 out of 8 hours, stand/walk about 2 out of 8 hours) except for the following limitations: never climb ladders/ropes/scaffolds, never crawl, never kneel; occasionally perform all other postural activities; and avoid concentrated exposure to hazards. I find the claimant has the concentration, persistence or pace to do simple, routine, repetitive tasks at one-step or two-step instructions for two-hour periods in an eight-hour day, interact occasionally with the public, and interact appropriately with coworkers and supervisors in a stable, routine setting.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565).

(7)     The claimant was born on July 22, 1963 and was 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

2

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from May 26, 2011, through the date of this decision (20 CFR 404.1520(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work

within the meaning of the Act. 42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing that he is unable to return to his past relevant work.  Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, Plaintiff asserts the ALJ "denied [Plaintiff] his right to due process by failing to follow the Administrative Procedures Act." (Dkt. No. 14 at 7 of 15.) Plaintiff also contends the ALJ erred in "failing to assign 'great weight' to the opinions of [Plaintiff's] treating physician, Dr. Thompson, that he was disabled."

(Id. at 9.) Plaintiff further asserts the ALJ "committed reversible error by failing to adequately assess" Plaintiff's pain and in "failing to assign 'substantial credibility'" to Plaintiff's testimony. (Id. at 11, 13.)

### **A.    Administrative Procedures Act**

In his first allegation of error, Plaintiff asserts that because the Honorable Ivar E. Avots issued an unfavorable decision on Plaintiff's previous disability application, Judge Avots should not have been assigned to the case *sub judice*. (Dkt. No. 14 at 8.) Plaintiff states,

> In the 2011 decision, Judge Avots made findings of fact that Mr. Ratchford was lacking in credibility and assessed the opinions of his primary care physician, Dr. Lori Thompson, "little weight" (T. 76, 85). Judge Avots was also assigned to Mr. Ratchford's subsequent application. In the subsequent hearing decision, Judge Avots demonstrated his bias by again finding the claimant lacking in credibility and assessing Dr. Thompson's opinions "little weight" (T. 27, 28).

(Dkt. No. 14 at 8.) Plaintiff complains that the "Greenville hearings office has shown actual prejudice or bias in the ALJ rotation policy at their office," as this office "routinely assigned subsequent applications back to the same judge who issued the prior unfavorable decision." (Id. at 7.) Plaintiff asserts such a policy violates the Administrative Procedures Act and indeed "goes against the fundamental fairness and due process to which each claimant is entitled under the APA, as these ALJs have already demonstrated their bias against these claimants by making findings of fact against them and their treating medical providers in prior decisions." (Id. at 8.)

> Title Five, United States Code, Section 3105 states,
>
> Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this

5

title. **Administrative law judges shall be assigned to cases in rotation so far as practicable**, and may not perform duties inconsistent with their duties and responsibilities as administrative law judges.

5 U.S.C. § 3105 (emphasis added). Plaintiff contends that the ALJ in his case was not assigned on a rotational basis, as required by Title Five, Section 3105. However, the undersigned finds Plaintiff's argument to be without merit. See Sykes v. Bowen, 854 F.2d 284, 288 (8th Cir. 1988) ("[W]e are not persuaded that reassigning a case on remand to the same ALJ who presided over the claimant's initial hearing would violate the APA. The APA requires ALJs to be assigned in rotation 'so far as practicable.' We have found no cases that suggest that under the circumstances of this case APA § 3105 has been violated."); see also Smith v. Colvin, 8:13-cv-02657-JMC, 2015 WL 1400507, at *3-4 (Mar. 25, 2015) (rejecting argument that the Greenville Office of Disability Adjudication and Review violated the plaintiff's due process rights and the APA by "failing to assign [the] case to an ALJ on a rotational basis"); Schrader v. Astrue, Civ. A. No. 3:12-cv-54, 2012 WL 7801234, at *7 (N.D. W. Va. Dec. 13, 2012), adopted at 2013 WL 1192315 (N.D. W. Va. Mar. 22, 2013).

The undersigned further notes that Plaintiff has not shown–in *any* way–that Judge Avots was biased against Plaintiff. The regulations provide that an Administrate Law Judge "shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. However, the fact that Judge Avots previously ruled against Plaintiff simply does not establish bias. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion." (citation omitted)); see also Corley v. Colvin, Civ. A. No. 9:12-2676-TMC, 2014 WL 607706, at *3 (D.S.C. Feb. 18, 2014) (contention of ALJ bias was without merit where the plaintiff "has not shown any evidence that the ALJ was prejudiced or actually biased against [plaintiff] or his counsel").

### B.    Treating Physician's Opinion

Plaintiff also asserts the ALJ erred in "failing to assign 'great weight' to the opinions of [Plaintiff's] treating physician, Dr. Thompson, that he was disabled." (Dkt. No. 14 at 9.) Plaintiff states,

> In the instant case, the Defendant accorded Dr. Thompson's four (4) medical source statements "little weight" because these opinions were "not well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are "inconsistent with the other substantial evidence in the record" (T. 28). This assertion by the ALJ is not supported by the entire medical record and is evidence of him nit-picking inconsistencies in the record to justify his denial of benefits to this claimant.

(Id. at 10.) Plaintiff points to Dr. Early's evaluation wherein Dr. Early "opined that the claimant's left hip only had ten (10) degrees of either internal or external rotation, his left knee had ninety (90) degrees of flexion only with pain, sensory exam showed decreased sensation up to the knee and the legs and up to the elbow and arms, cerebellar testing documented moderate ataxia, and hip rotation was 10 degrees and induced lumbar pain." (Id.) Plaintiff also points to Dr. Thompson's notation that Plaintiff "was in need of surgical resection of his right shoulder lipoma and left knee arthroscopy." (Id.) Plaintiff further contends that the lack of updated diagnostic studies "should certainly not be held against" him because "these studies were most likely not ordered due to the [Plaintiff's] lack of necessary funds or health coverage." (Id.)

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. 20 C.F.R. § 404.1545; see also 20 C.F.R. § 404.1527. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." 20 C.F.R. § 404.1527(c). Special consideration is to be given to the opinions of treating physicians of the claimant, based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(c)(2). Even so, "the rule does not require that the [treating physician's opinions] be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam ) (citing Campbell v. Bowen, 800 F.2d 1247,

1250 (4th Cir. 1986)).[2] The Commissioner is obligated to weigh the findings and opinions of treating

physicians and to give "good reasons" in the written decision for the weight given to a treating

source's opinions. SSR 96-2P, 1996 WL 374188, at *5; see also 20 CFR § 404.1527(c)(2).

The ALJ noted the four forms filled out by Plaintiff's treating physician, Dr. Thompson.

(See R. at 19-20.) The ALJ's decision provides, *inter alia*,

> In August 2010, [Dr. Thompson] completed a check-box form for claimant's attorney.
> She said claimant was not able to engage in any type of employment, complete work
> related tasks in a timely manner, exhibit the concentration, persistence and pace
> required in a work setting, work a normal workday without the necessity of frequent
> breaks and/or rest, or meet minimum standards of employment such as productivity,
> punctuality and reliability. If he attempted a job, he was most likely to be absent more
> than four times per month. She said he had no work capacity and would never be able
> to work. The prognosis was permanent and total.
>
> When asked to state any diagnoses, restrictions or limitations (the only portion of the
> form where she did not merely check boxes), Dr. Thompson said he had brittle
> diabetes and fluctuating blood sugars causing frequent episodes of fatigue and
> weakness. He had poor balance secondary to left leg injury. He could not lift/carry
> greater than five pounds. Diagnoses were poorly controlled diabetes mellitus with
> peripheral neuropathy, chronic left knee and ankle pain and poor balance (Exhibit B
> 10F). This is the same form and opinion I had previously rejected at B1A/18.
>
> . . .
>
> In February 2011, Dr. Thompson completed the same form and gave the same
> answers in the check boxes. As to restrictions and limitations, she said he was unable
> to work or drive due to brittle diabetes mellitus, hypo/hyperglycemic episodes and
> poor balance (Exhibit B 11F). This is the same form and opinion I rejected at B1
> A/18.
>
> . . .
>
> In February 2012 and September 2012, Dr. Thompson completed that same form with
> the same answers she had give[n] previously, except that she included no narrative
> comments in February 2012. In September 2012, she said he could not engage in any
> employment due to diabetes mellitus, peripheral neuropathy and chronic pain in the
> left knee. When asked to describe restrictions or limitations, she said, "unable to
> work." As to diagnoses, she listed anemia, poorly controlled insulin dependent

---

[2] But see 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.").

diabetes mellitus with peripheral neuropathy, chronic left knee/ankle pain with rods placed, chronic right arm pain with large lipoma of right shoulder that required surgical removal, osteoarthritis at multiple sites and hyperlipidemia. To correct or remove the impairment, he needed surgical resection of right shoulder lipoma and left knee arthroscopy (Exhibits B 5F, B7F).

(R. at 19-20.)

The ALJ thoroughly discussed Dr. Thompson's opinions. (See R. at 19-20, 27-28.) The ALJ

stated,

I have considered the opinion evidence, including Dr. Thompson's opinions. Under SSR 96-5p, a medical source opinion that an individual is unable to work is an administrative finding[] and the final responsibility for deciding such issues is reserved to the Commissioner. I must always carefully consider medical source opinions about such issues. Such opinions are never entitled to controlling weight or special significance, but I may not ignore them and must evaluate all the evidence in the record that may have a bearing on the determination of disability to determine the extent to which the opinion is supported by the record.

Because Dr. Thompson's statements that the claimant is unable to work are opinions about an issue reserved to the Commissioner, they are not entitled to controlling weight or special significance. Dr. Thompson did not provide a reasonable basis for the opinion. The findings made during her course of treatment do not support her conclusions. The opinions are inconsistent with the remainder of the evidence, including her own exam findings. Therefore, the opinions are entitled to little weight, and are not consistent with the evidence (20 CFR 404.1527(e) and SSR 96-5p).

(R. at 27.) The ALJ found that Dr. Thompson's opinion about Plaintiff's lifting ability "is not entitled

to controlling weight." (R. at 28.) In so concluding, he stated,

[Dr. Thompson] is a "treating source" and the opinion is a medical opinion, but the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record, including her exam findings.

For example, in June 2010, she found no sensory deficits or skin changes. In December 2010, he denied to her that he had diabetes-associated symptoms of orthostasis, hypoglycemia, nocturia or excessive urination. Exam showed decreased sensation in the toes, but showed no diabetic ulcers. In February 2011, Dr. Thompson found normal diabetic exam of right foot and decreased sensation in the left foot. In July 2011, Dr. Thompson noted no positive findings of the extremities or neurologic system (Exhibit B 1F). In January 2012 he had normal diabetic foot exam and normal musculoskeletal and neurologic findings. In February 2012, foot exam showed only decreased plantar sensation (Exhibit B 3F).

9

> For the reasons stated, I cannot assign controlling weight to Dr. Thompson's opinions and assign them little weight applying the above factors.

(R. at 28.)

The undersigned finds no reversible error here. Many of Dr. Thompson's opinions are simply that Plaintiff is unable to work, but as the ALJ correctly noted, such opinions are not entitled to any special significance. See 20 C.F.R. § 404.1527(d). Furthermore, as the ALJ noted, Dr. Thompson's opinions appear on "check the box" forms, and several of them provide little substantive detail. (See R. at 238, 245, 251-52.) On the August 2010 form, in response to the question about Plaintiff's restrictions or limitations, she wrote that Plaintiff had "brittle diabetes, fluctuating blood sugars causing frequent episodes of fatigue and weakness" and that Plaintiff had poor balance secondary to left leg injury. (R. at 251.) She indicated that Plaintiff could not lift or carry more than five pounds. (R. at 251.) In response to the same question on the February 2011 form, she reiterated the five pound lift and carry limitation, and further wrote, "Unable to work or drive due to brittle diabetes, hypo/hyperglycemic episodes, poor balance." (R. at 252.) On the February 2012 and September 2012 forms, she again noted the five pound lift and carry limitation, but in response to the question about restrictions or limitations simply wrote "no work." (R. at 238, 245.)

It is undisputed that Plaintiff has severe impairments. But a review of the medical records from Plaintiff's visits with Dr. Thompson has convinced the undersigned that the ALJ did not err in giving her opinions little weight. Her opinions are–as the ALJ noted–inconsistent with the other substantial evidence in the record, including her exam findings. Dr. Thompson opined that Plaintiff was unable to engage in any kind of employment, would likely be absent from work more than four times per month, and would be unable to maintain concentration, persistence, and pace required in the typical job setting. (See R. at 238, 245, 251-52.) As supporting diagnoses, she lists Plaintiff's poorly controlled diabetes, peripheral neuropathy, poor balance, and chronic left knee and ankle pain. (See, e.g., R. at 251.) However, Plaintiff's December 2010 examination revealed no orthostasis, chest pain, orthopnea, nocturia, weight loss, hypoglycemia, or excessive urination. (R. at 213.) Plaintiff

10

had decreased sensation in the toes but no diabetic ulcers. (R. at 213-14.) Dr. Thompson's February

2011 notes indicate Plaintiff was still complaining of pain and tingling in his legs, but she also found

a normal diabetic exam of the right foot and decreased sensation as to the left foot. (R. at 211-12.)

Her notes from January of 2012 reiterate Plaintiff's chronic knee pain but also indicate he takes

Lortab rarely. (R. at 232.) In February of 2012, Dr. Thompson performed a diabetic foot exam on

Plaintiff; the only abnormality listed was decreased plantar sensation. (R. at 234-35.) She further

indicated that Plaintiff's chronic pain was "stable on prn Lortab." (R. at 235.)[3]

The ALJ noted that the "evidence shows that claimant's daily activities are limited primarily

by physical problems that limit prolonged standing and walking." (R. at 26.) The ALJ further stated,

> I have considered claimant's credible allegations of lower extremity symptoms in
> determining that he can stand/walk for a maximum of two hours in an eight-hour
> workday, can never climb ladders/ropes/scaffolds, kneel, crawl or balance and can
> only occasionally perform all other postural activities. I have considered symptoms
> from his right shoulder lipoma in finding that he can lift/carry a maximum of 10
> pounds frequently and 20 pounds occasionally. I have considered symptoms of
> diabetes mellitus in determining that he must avoid concentrated exposure to hazards.
> However, I find he has no limitation for sitting and can sit for up to six hours in an
> eight-hour workday.

(R. at 26.)  This assessment is supported by substantial evidence. The ALJ noted Plaintiff's testimony

that he keeps his legs elevated for eight to ten hours a day but found "no evidence of venous or

lymphatic disorders that would require him to elevate his legs." (R. at 27.) The ALJ noted Plaintiff's

testimony that he had used a cane for four years but found "no evidence that a treatment source

prescribed use of a cane." (R. at 27.) The ALJ cited Dr. Early's notation that Plaintiff's cane did not

have much wear on it. (R. at 27.) The ALJ further concluded that the "use of a single cane would not

interfere with activities where [Plaintiff] remained seated for most of the day." (R. at 27.) The ALJ

---

[3]Although the ALJ did not mention these medical records in discussing Dr. Thompson's opinion, the undersigned further notes that Dr. Thompson's notes from April 2012 indicate that although Plaintiff was still experiencing tingling as a result of his neuropathy, it was "not terribly bothersome." (R. at 239.) In June of 2012, Dr. Thompson noted Plaintiff was having difficulty walking due to his left leg and had decreased sensation in his feet. (R. at 241-42.) In her September 2012 notes, Dr. Thompson notes that "prolonged standing/walking [is] difficult" and that Plaintiff's pain was "well controlled" with Lortab. (R. at 243.)

11

stated that "Dr. Early's findings support" Plaintiff's RFC; he thoroughly discussed Dr. Early's report

and opinions, to which the ALJ assigned "probative" weight. (R. at 24-25, 29.) Dr. Early noted

Plaintiff's reports of tingling in his extremities, Plaintiff's "poor standing tolerance and ataxia," and

Plaintiff's report that he thought he could stand for twenty minutes. (R. at 24.) The ALJ stated,

however,

> [Dr. Early] said the following issues were not consistent with 100% use of the cane
> in the house. The cane did not look like it had been used every day for hours per day
> for three years. Gait exam did not correlate with shoe tread wear. He thought the
> claimant exaggerated his gait exam. However, he had 90° of ROM in the left knee.
> Dr. Early thought it hurt him to walk and that he probably had severe arthritis in his
> left knee (Exhibit B 2F).

(R. at 24-25.) The ALJ considered the opinions of the state agency consultants and concluded "the

initial and reconsideration RFC assessments are well supported by medically acceptable clinical and

laboratory diagnostic techniques and are consistent with other substantial evidence of record. . . ."

(R. at 25.) He noted the consultants' conclusions that, *inter alia*, Plaintiff "could perform between

sedentary and light exertion (lift/carry a maximum of 10 pounds frequently and 20 pounds

occasionally, stand/walk for two hours in an eight-hour workday and sit for six hours)." (R. at 25.)

Although Plaintiff believes a different conclusion is warranted, the ALJ's rejection of Dr.

Thompson's opinions is supported by substantial evidence. See Johnson v. Barnhart, 434 F.3d 650,

653 (4th Cir. 2005) ("In reviewing for substantial evidence, we do not undertake to reweigh

conflicting evidence, make credibility determinations, or substitute our judgment for that of the ALJ.

Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled,

the responsibility for that decision falls on the ALJ." (internal quotation marks and citations

omitted)).

### C.    **Pain and Credibility**

In his third allegation of error, Plaintiff contends the ALJ ""committed reversible error by

failing to adequately assess" Plaintiff's pain. (Dkt. No. 14 at 11.) Plaintiff complains that the ALJ

"minimized the claimant's pain complaints because the claimant had only received conservative

treatment since 2008 and had not received the type of medical treatment that would indicate the presence of a disabling impairment." (Id. at 12.) Plaintiff essentially asserts that the ALJ's pain assessment is erroneous because Plaintiff could not afford other treatment. (Id. at 12-13.) Relatedly, in his fourth allegation of error, Plaintiff contends the ALJ erred in "failing to assign 'substantial credibility'" to Plaintiff's testimony "that he suffered from severe, disabling pain." (Id. at 13.)

As stated in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig, 76 F.3d at 594. First, the plaintiff must present "objective medical evidence showing the existence of a medical impairment(s) which results from the anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Id. (internal quotation marks and citations omitted). The Fourth Circuit explained as follows:

> It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. *See* 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, see id.; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), *see* 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, *see* 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

Craig, 76 F.3d at 595; see also SSR 96-7p, 1996 WL 374186, at *3 (listing factors "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements").

The undersigned finds no error in the ALJ's analysis of Plaintiff's pain or Plaintiff's credibility. The ALJ noted and applied the correct standards. (See R. at 26-27.) The ALJ stated,

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence

and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC assessment.

(R. at 27.) The ALJ considered Plaintiff's daily activities and concluded that Plaintiff's "daily activities are limited primarily by physical problems that limit prolonged standing and walking." (R. at 26.) The ALJ considered the location, duration, frequency, and intensity of the pain and other symptoms as well as factors that precipitate and aggravate Plaintiff's symptoms. (R. at 26.) The ALJ stated,

> I have considered claimant's credible allegations of lower extremity symptoms in determining that he can stand/walk for a maximum of two hours in an eight-hour workday, can never climb ladders/ropes/scaffolds, kneel, crawl or balance and can only occasionally perform all other postural activities. I have considered symptoms from his right shoulder lipoma in finding that he can lift/carry a maximum of 10 pounds frequently and 20 pounds occasionally. I have considered symptoms of diabetes mellitus in determining that he must avoid concentrated exposure to hazards. However, I find he has no limitation for sitting and can sit for up to six hours in an eight-hour workday.

(R. at 26.) The ALJ considered the type, dosage, effectiveness, and side effects of Plaintiff's medications as follows:

> [Plaintiff] testified that he takes his medicines himself. He takes Lortab for pain. He alleged that during the hearing, pain level was 8/10. However, a medication list from August 2011 shows that other than medications for diabetes mellitus, he was taking only Lortab and used it only on an as needed basis. This is not consistent with allegations of constant, debilitating pain. He has denied having medication side effects.

(R. at 26.)

Plaintiff takes issue with the ALJ's assessment of the treatment–other than medications–that Plaintiff received. (See Dkt. No. 14 at 12-13.) Plaintiff contends that he could not afford other treatment. (Id.) In assessing this factor, the ALJ stated,

> As to treatment other than medication the claimant receives for relief of pain or other symptoms and any measures other than treatment he uses to relieve pain or other symptoms (SSR 96-7p) [sic]. He testified that he keeps his legs elevated for about 8-10 hours a day; however, I find no evidence of venous or lymphatic disorders that would require him to elevate his legs.

14

Claimant has not received the type of medical treatment that would indicate the presence of disabling impairments. Also of significance is the lack of any evidence of treatment by mental health professionals, pain management or physical therapists; apparently, no treatment source recommended such treatment. Claimant has had only conservative treatment since 2008 and has responded well to such treatment.

Claimant testified that someone gave him a cane that he has used for years, but I find no evidence that a treatment source prescribed use of a cane. In August 2011, he told Dr. Early that he had been using [it] every day for three years, but Dr. Early observed that the cane did not have that much wear on it. There is no discoloration or wear in the handle area (Exhibit 2F). Thus, there is evidence that the claimant does not use the cane as much as he alleged. Moreover, the use of a single cane would not interfere with activities where he remained seated for most of the day. I note that his Waddell's signs were positive as well. I believe this detracts from the credibility of his complaints.

(R. at 27.)

Plaintiff's arguments of error speculate as to the reasons for Dr. Thompson's failure to refer Plaintiff for other treatment and testing. (See Dkt. No. 14 at 12-13.) It is difficult to imagine reversible error on conditional assumptions. In any event, the ALJ did note that "Dr. Harakas has recommended left knee surgery, but [Plaintiff] has not had the surgery due to possible complications from his diabetes." (R. at 26.) Moreover, the ALJ clearly did not base his conclusion solely on the type of treatment other than medication Plaintiff received. The record contains several references to the fact that Lortab offers Plaintiff adequate control of his pain; the ALJ noted as much. (See R. at 26; see also R. at 232, 235, 243.) The ALJ further found that although Plaintiff testified he must keep his legs elevated and use a cane, the record did not contain a prescription for a cane or evidence of a disorder requiring elevation of the legs. (R. at 27.) On this record, the undersigned finds no reversible error. See, e.g., Davis v. Colvin, Civ. A. No. 9:12-2244-CMC-BM, 2014 WL 172513, at *3 (D.S.C. Jan. 15, 2014) ("Because the ALJ did not rely solely on Plaintiff's failure to obtain or follow through with treatment to discount Plaintiff's credibility, and the ALJ's credibility determination is supported by substantial evidence, the court finds that this error is harmless."); see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ("The mere fact that working may cause pain or discomfort does not mandate a finding of disability".). The ALJ's assessment of Plaintiff's

pain and credibility is supported by substantial evidence; the undersigned therefore recommends affirming the decision of the Commissioner.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court concludes that the findings of the ALJ are supported by substantial evidence and recommends that the decision of the Commissioner be affirmed.

IT IS SO RECOMMENDED.

_____

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 22, 2015
Charleston, South Carolina